UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LINDA BROCUGLIO and WAYNE BROCUGLIO, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:14 CV 2097 ) |
| THOR MOTOR COACH, INC., | ) ) ) |
| Defendant. | ) |

## OPINION and ORDER

I. **BACKGROUND**

In this action, plaintiffs Linda and Wayne Brocuglio ("Brocuglio Family"), citizens of North Carolina, bring claims against Thor Motor Coach, Inc. ("Thor"). On December 13, 2013, plaintiffs purchased a 2013 Four Winds Class A motor coach vehicle ("RV") manufactured by Thor. (DE # 1 at 2.) The RV was purchased at Carolina Coach and Camper, LLC ("Carolina Coach"), a supplier, merchant, and authorized representative of Thor. (*Id.* at 3.) Within a week of their purchase, plaintiffs discovered major water leakage problems in the RV and returned it to Thor for servicing and repairs. (*Id.* at 4.) This was just the beginning of plaintiffs' problems with the RV, as they discovered numerous defects requiring many lengthy repairs over the course of the next year. (*Id.*) With the RV having been in repair shops for a combined 160 days, plaintiffs provided written notice to Thor demanding either a replacement RV or their money back. (*Id.*)

1

Thor refused this demand just as it had plaintiffs' previous demands. (*Id.* at 4-5.) Instead, Thor promised plaintiffs that, if given one more chance to repair the vehicle, "it would be fixed correctly and [the Brocuglio Family] would come away happy." (*Id.* at 5.) Furthermore, Thor promised to provide continuous progress updates on the repairs (including photographs of their work) and to perform a "200 point" inspection before returning it. (*Id.*; DE # 35-2 at 4.) Plaintiffs agreed to yet another repair. However, plaintiffs allege that Thor broke its promises by failing to provide progress updates and more importantly, failing to satisfactorily repair the RV. (DE # 1 at 5.)

Plaintiffs filed this action bringing breach of warranty claims under North Carolina law and the Magnuson-Moss Warranty Act, as well as a claim under the North Carolina Unfair and Deceptive Acts and Practices Statute ("UDTPA"). (DE # 1.) Thor has filed a Rule 12(c) motion for judgment on the pleadings as to the UDTPA claim based on the failure to allege actionable conduct and, alternatively, based on the economic loss rule. (DE # 26.) Thor has also moved under Rule 12(b)(1) to dismiss plaintiffs' warranty claims for lack of subject matter jurisdiction based on the failure to meet the minimum amount-in-controversy requirements. (*Id.*) For the following reasons, Thor's motion will be **granted, in part,** and **denied, in part.**

Thor has also moved to exclude the valuation testimony of plaintiffs' expert, Tom Bailey. (DE # 24.) The Brocuglio Family has filed their own motion to strike various exhibits accompanying Thor's motions. (DE # 31.) Both motions will be **denied as moot.**

## II. LEGAL STANDARD

   *A.    Rule 12(c)*

In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the court applies the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.,* 499 F.3d 629, 633 (7th Cir. 2007). That means that the court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While there is no need for detailed factual allegations, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Pisciotta,* 499 F.3d at 633 (citation omitted). Factual allegations also must be enough to raise a right to relief above the "speculative level" to the level of "plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. In examining the facts and matching them up with the stated legal claims, the court must give "the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psych. & Neur., Inc.,* 40 F.3d 247, 251 (7th Cir. 1994).

As with a 12(b)(6) motion, a plaintiff defending a 12(c) motion "can elaborate on

3

his factual allegations so long as the new elaborations are consistent with the pleadings," and may "submit materials outside the pleadings to illustrate the facts [he] expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see id.* ("In the turmoil concerning civil pleading standards stirred up by [*Iqbal*] and [*Twombly*], a plaintiff who is opposing a Rule 12(b)(6) or Rule 12(c) motion and who can provide such illustration may find it prudent to do so.").

B.  Rule 12(b)(1)

The Federal Rules of Civil Procedure command that courts dismiss any suit over which they lack subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In ruling on such a motion, the court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 771 (7th Cir. 2002). However, the court may also "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

"Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule." *NLFC, Inc. v. Devcom Mid-Americam Inc.,* 45 F.3d 231, 237 (7th Cir. 1995). If material factual allegations are contested, the proponent of federal jurisdiction must "prove those jurisdictional facts by

4

a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id.* (citing *Johnson v. Wattenbarger*, 361 F.3d 991 (7th Cir. 2004)). Put another way, "jurisdiction exists unless it is legally impossible for the recovery to exceed the minimum." *Id.* at 542.

### III. DISCUSSION

#### A. *North Carolina Substantive Law Applies*

A federal court sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "Indiana is a *lex loci delicti* state: in all but exceptional cases it applies the law of the place where harm occurred." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987)). Here, plaintiffs are citizens of North Carolina and purchased the allegedly-defective RV in North Carolina. Both parties agree that North Carolina substantive law covers their claims. (DE ## 27 at 5; 33 at 12.)

#### B. *Rule 12(c) Motion*

Thor has moved for judgment on the pleadings with regards to plaintiffs' UDTPA claim. (DE # 26). Pursuant to North Carolina General Statutes, section 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a)

5

(2015). "The determination of whether an act or practice is an unfair or deceptive practice that violates [§ 75-1.1] is a question of law for the court." *Gray v. N.C. Ins. Underwriting Ass'n,* 529 S.E..2d 676, 681 (N.C. 2000). To state a claim under the UDTPA, N.C. Gen.Stat. § 75-1.1, plaintiffs must allege (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to plaintiffs. *Id.*; *Kelly v. Georgia Pac. LLC*, F. Supp. 2d 785, 798 (E.D.N.C. 2009) (citing *Dalton v. Camp,* 548 S.E.2d 704, 711 (N.C. 2001)).

To be actionable under the statute, conduct must be "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 902 (4th Cir. 1996) (quoting *Branch Banking and Trust Co. v. Thompson,* 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)). A breach of contract is not unfair or deceptive absent "substantial aggravating circumstances." *Gilbane*, 80 F.3d at 903 (citations omitted). Similarly, "a broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise." *Id.* (citing *Kent v. Humphries,* 275 S.E.2d 176, 182-83, modified, 281 S.E.2d43 (N.C. Ct. App. 1981); *Overstreet v. Brookland, Inc.,* 279 S.E.2d 1, 6 (N.C. Ct. App. 1981)).

Plaintiffs argue that they have made sufficient allegations of aggravating circumstances to support a UDTPA claim. (DE # 33 at 15-18.) Specifically, plaintiffs point out that in the fall of 2014, after many months of failed repair attempts, Thor asked for one last chance to make repairs on the RV. *(Id.* at 15.) Plaintiffs agreed, but only after Thor promised to provide them with continuous progress updates (with

6

photographic documentation) and promised to perform a "200 point" inspection of the RV. According to plaintiffs, neither happened and the last attempt at repairs was entirely unsuccessful. Plaintiffs argue that Thor's promise to go above and beyond its contractual duty to repair the RV had the tendency and capacity to mislead plaintiffs into believing that the job would be done right.

There are two problems with plaintiffs' argument. First, even taking all of the allegations as true, plaintiffs have not alleged that Thor had no intent to follow through on its promises to provide progress updates and to perform a "200 point" inspection. Plaintiffs cite to *Overstreet v. Brookland, Inc.,* 279 S.E.2d 1, 6 (N.C. Ct. App. 1981) for support. In that case, the defendant promised to the plaintiff, a prospective buyer, that no part of a subdivision would be used for nonresidential purposes. *Id.* However, one year later, the defendant sold a subdivision lot to a buyer whom it knew would use the lot for nonresidential purposes. *Id.* The court held that the defendant had not violated the UDTPA because no evidence indicated that the defendant intended to break its promise at the time defendant made the promise. *Id.* at 6-7; *see also Wells Fargo Bank, N.A. v. Corneal,* 767 S.E.2d 374, 378 (N.C. Ct. App. 2014) (no UDTPA claim where a bank broke a promise to allow a party to refinance a loan upon maturity because the party did not allege that bank intended to break its promise at the time); *Opsahl v. Pinehurst*, 344 S.E.2d 68, 70 (N.C. Ct. App. 1986) (for similar reasons, no UDTPA claim where defendant missed construction deadline despite agent's representation that the completion date was firm and would be met).

Second, even if they sufficiently alleged that Thor intentionally misled them, it is doubtful that their reliance on that misrepresentation caused them any actual injury. Plaintiffs' injury is that they received a defective RV from Thor. The RV was defective both before and after the last repair attempt. Thus, plaintiffs were no worse off than they had been prior to Thor's alleged deceit regarding its final attempt at making repairs. "To recover, a plaintiff must have suffered actual injury as a proximate result of the deceptive statement or misrepresentation." *Craven v. Cope,* 656 S.e.2d 729, 733 (N.C. Ct. App. 2008). Plaintiffs' UDTPA claim fails because they have not alleged any actual injury resulting from Thor's misrepresentation.

Plaintiffs also assert that Thor unfairly refused their demands for a refund or replacement RV. (DE # 33 at 17.) They argue that such conduct violated the UDTPA in that it was an "inequitable assertion of [Thor's] power or position." (*Id.*) Yet, the cases plaintiffs cite in support of their assertion involve breaches of fiduciary duty or outright fraud and thus bear little resemblance to their own allegations . *See Compton v. Kirby*, 577 S.E.2d 905 (N.C. Ct. App. 2003); *Libby Hill Seafood Restaurants, Inc. v. Owens*, 303 S.E.2d 565 (N.C. Ct. App. 1983). Plaintiffs present no support for the contention that a company's refusal to grant a full refund or replacement for a defective product amounts to "immoral, unethical, unscrupulous, or substantially injurious" conduct that is proscribed by the UDTPA. *Bolton Corp. v. T.A. Loving Co.*, 380 S.E.2d 796, 809 (N.C. Ct. App. 1989) (citing *Opsahl*, 344 S.E.2d at 76) (internal quotation marks removed).

Thor also argues that the economic loss rule bars plaintiffs' UDTPA claim. (DE

8

# 27 at 10-11.) Whether North Carolina courts would apply this rule to UDTPA claims is very much an open question. *See Ellis v. Louisiana-Pacific Corp.,* 699 F.3d 778, 787 n.5 (4th Cir. 2012) ("North Carolina courts have never addressed whether UDTPA claims are subject to the [economic loss rule] and in the absence of such direction we are well-advised to rely on other grounds."). However, the court need not decide that issue because it finds that plaintiffs' UDTPA claim fails on the merits. *See Buffa v. Cygnature Constr. and Dev., Inc.,* 796 S.E.2d 64 (N.C. Ct. App. 2016) (looking at the merits to uphold trial court's grant of summary judgment on UDTPA claim where the trial court originally ruled that the economic loss rule applied).

Plaintiffs briefly argue that they should be permitted to file an amended complaint if their UDTPA claim is dismissed. (DE # 33 at 4) *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and NW Indiana,* 786 F.3d 510, 519 (7th Cir. 2015). Discovery is closed and the dispositive motion deadline has lapsed. Thus, the court hesitates to grant leave to amend at this late stage. However, the briefing on this issue is insufficient for the court to rule on the matter at this time. Plaintiffs will be afforded the opportunity to file a motion seeking leave to file an amended complaint.

    C.    *Rule 12(b)(1) Motion*

Thor moves to dismiss plaintiffs' remaining warranty claims for lack of subject matter jurisdiction based on the failure to meet the minimum amount in controversy requirement. "The Magnuson-Moss Act allows a plaintiff to sue in federal court for breach of warranty, 15 U.S.C. § 2310(d)(1), provided that certain jurisdictional

thresholds are met." *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir. 2004). One requirement is that the amount in controversy must reach $50,000. *Id.* When a plaintiff relies on state law causes of action, the court looks to state law to "determine the remedies available, which in turn informs the potential amount in controversy." *Id.* (citing *Gardynski-Leschuck v. Ford Motor Co.* 142 F.3d 955, 956 (7th Cir. 1998). Plaintiffs' Magnuson-Moss Act claims are substantively identical to their state law warranty claims. Thus, for jurisdiction to exist, it must be legally possible for their damages to exceed $50,000 based on the remedies available under North Carolina law.

The Seventh Circuit has developed the following formula for determining the amount in controversy in cases such as this: "the price of the replacement vehicle, minus both the present value of the allegedly defective [vehicle] and the value that the plaintiff received from the use of the allegedly defective [vehicle]. *Schimmer,* 384 F.3d at 405-406 (citing *Gardynski-Leschuck,* 142 F.3d at 957); *Voelker v. Porsche Cars of N. America, Inc.,* 353 F.3d 516, 521 (7th Cir. 2003).

Naturally, the parties offer competing figures for the amount in controversy calculation. The logical starting point for the first number, the price of the replacement vehicle, is the "Sales Contract" (DE # 1-1 at 1-3) which lists a retail price of $132,779. *See Gardynski-Leschuck*, 142 F.3d at 956 ("the car had a purchase price of some $18,500, and this is the figure that matters for jurisdictional purposes"). However, Thor contends that the retail price on the contract was inflated by the fact that plaintiffs received a very large "dealer discount" which, for business purposes, was added to the trade-in value

for plaintiffs' old RV. (DE # 27 at 20-21.) However, nothing in the sales contract reflects this discount, and plaintiffs contend that none of the Carolina Coach sales representatives discussed this discount with them during the sale. (*See* DE # 33 at 6.) Wayne Brocuglio's testimony is consistent with the retail price of $132,779. (DE # 35-11 at 15.)

As for the present value of the defective RV, Wayne Brocuglio testified that he received an $85,000 trade-in offer from another dealer. (*Id.* at 14-15.) This offer is within the same range as figures from the National Automobile Dealers Association guide for the RV which listed a trade-in value of $70,190 and a used retail value of $91,800. (DE # 28-5 at 2.)

Thus, the retail price, $132,779, minus the $85,000 estimated present value results in damages totaling $47,779 – just shy of the $50,000 threshold.[1] In determining the amount in controversy under the Magnuson-Moss Act, legal fees and costs at the time of filing may also be included. *Gardynski-Leschuck*, 142 F.3d at 958; *see also Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 845 (7th Cir. 2014) ("Burzlaff's attorney fees at the time of removal could not reasonably have reached the nearly $15,000 needed to make up the difference."). Plaintiffs have submitted an affidavit from their attorney

---

[1]The court has not attempted to subtract the value of plaintiffs' use of the RV. Neither party has presented any evidence on this point, and based on the allegations, any such benefit would likely be minimal. Moreover, under North Carolina law, damages are not offset by the benefit of use where vehicles are owned as opposed to leased. *Blankenship v. Town and Country Ford, Inc.*, 622 S.E.2d 638, 643 (N.C. Ct. App. 2005) (upholding damages calculation of the difference between amount paid and the car's actual value without offsetting use of the vehicle.)

attesting that the total costs and fees incurred prior to the filing of the complaint amounted to $3,479.15, thus bringing the total amount in controversy safely above the threshold to $51,258.05.

Thor proposes a separate amount in controversy figure, based upon the testimony of plaintiffs' expert Tom Bailey, who opined that the difference in value between the defective RV and a non-defective RV was $24,500. (DE # 27 at 17.) Ironically, Thor has also moved to exclude Bailey's valuation testimony on the grounds that it is unreliable and that he does not explain how he arrived at that figure. (DE # 24.) Whatever weight should be placed on this competing figure, it is not enough to convince the court that jurisdiction does not exist as a matter of legal certainty.

Whether a jury would ultimately agree with Thor regarding the "dealer discount" or Bailey's expert testimony is not at issue for the present motion. In response to Thor's 12(b)(1) challenge, plaintiffs submitted competent proof regarding the retail price of the RV, its current value, and their pre-filing fees and costs. Applying the *Schimmer* formula, those figures meet the $50,000 threshold. The court cannot say with certainty that it is legally impossible for plaintiffs' damages to reach $50,000. *Meridian*, 441 F.3d at 542. As such, the court finds that subject matter jurisdiction exists over plaintiffs' remaining claims.

D.    *Motions to Strike*

Thor filed a motion to strike the valuation testimony of plaintiffs' expert Tom Bailey. (DE # 24.) However, the court did not rely upon Bailey's opinion testimony in

deciding the present motions. Plaintiffs filed their own motion to exclude certain exhibits accompanying Thor's motion to dismiss. (DE # 31.) Plaintiffs' motion sought to foreclose Thor from introducing parol evidence for the purpose of contradicting the retail price as listed on the sales contract. (DE # 32.) Resolution of this issue did not bear on the outcome of Thor's combined motion for judgment on the pleadings and motion to dismiss for lack of subject matter jurisdiction. Accordingly, both motions are denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Thor's motion (DE # 26) is **GRANTED, in part,** and **DENIED, in part**. Judgment on the pleadings is **GRANTED** as to plaintiffs' UDTPA claim. That claim (Count III) is dismissed. Thor's motion to dismiss plaintiffs' remaining claims for lack of jurisdiction is **DENIED.**

Thor's motion to exclude (DE # 24) is **DENIED.** Plaintiffs' motion to strike (DE # 31) is **DENIED.**

Plaintiffs are **GRANTED** until **May 1, 2017**, to file a brief motion seeking leave to file an amended complaint. If no such motion is filed by that date, this matter will proceed to the court's trial calendar.

          **SO ORDERED**.

Date: March 31, 2017

         s/ James T. Moody
         JUDGE JAMES T. MOODY
         UNITED STATES DISTRICT COURT